# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MARYANN COTTRELL and RICHARD G. HOLLAND,

              Plaintiffs,

    v.

NICHOLSON PROPERTIES, LLC, et al.,

              Defendants.

Civ. No. 12-2128 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

Maryann Cottrell
Richard G. Holland
31 S. Academy Street
Glassboro, New Jersey 08028

    *Pro Se Plaintiffs*

Seth Clement Hasbrouck, Esquire
Costa Vetra LaRosa & Costa
P.O. Box 1615
2039 Briggs Road
Mount Laurel, New Jersey 08054

    *Attorneys for Defendants Nicholson Properties, LLC, George Nicholson, Sr., and George Nicholson, Jr.*

**HILLMAN**, District Judge

    This matter comes before the Court by way of a motion [Doc. No. 24] seeking to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) made by Defendants Nicholson Properties, LLC, George Nicholson, Sr., and George Nicholson, Jr. The Court has considered the parties'

submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion will be granted.

## I.  <u>JURISDICTION</u>

In this action, Plaintiffs assert claims for retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, and the New Jersey Law Against Discrimination ("NJLAD"), 10:6-1 <u>et seq.</u>, respectively.  The Court exercises original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

## II.  <u>BACKGROUND</u>

As set forth in the First Amended Complaint, Plaintiff Maryann Cottrell ("Cottrell") is the mother of a severely disabled daughter, and Plaintiff Richard Holland ("Holland") serves as a secondary caregiver for Cottrell's daughter.  (Am. Compl. [Doc. No. 18] ¶¶ 10, 12.)  Defendant Nicholson Properties, LLC  ("Nicholson Properties") is a limited liability company that operates a retail strip mall located at 135 East High Street, Glassboro, New Jersey ("the 135 East High Street location"), consisting of a self-service car wash known as the Hollybush Car

Wash and a self-service Laundromat known as the Hollybush Laundromat. (Id. ¶¶ 3, 19.) Nicholson Properties also leases retail space at the 135 East High Street location to a Mexican grocery store called Casa Rocie's. (Id. ¶¶ 19-20.) Defendants George Nicholson, Sr. and George Nicholson, Jr. are alleged to be the principals, partners, officers, agents or employees of Defendant Nicholson Properties, LLC. (Id. ¶¶ 4-5.)

According to the First Amended Complaint, although they themselves are not disabled, both Cottrell and Holland are lawfully permitted to park their vehicles in handicap accessible parking spaces reserved for disabled individuals when transporting Cottrell's daughter. (Id. ¶¶ 11, 13.) It appears through their experience caring for Cottrell's daughter, Plaintiffs have become long-time "advocates for the disabled." (Id. ¶ 14; see also ¶¶ 16-17.) Plaintiffs allege that "part of their advocacy efforts" includes assessing and documenting "parking access at public accommodations that they come in contact during their daily services." (Id. at ¶ 15.) Specifically, Plaintiffs "regularly file Title II and Title III complaints with the U.S. Department of Justice" and other appropriate departments and agencies regarding the denial of

access.[1]  (Id. ¶ 18.)

Beginning in June of 2009 and continuing through February of 2012, Cottrell and Holland began documenting a variety of purported violations they observed on Defendants' property and started filing citizen's complaints against Nicholson Properties based on these violations.  (Id. ¶¶ 21, 20a, 21a-28, 34, 36, 38, 40-42.)[2]  The first of these incidents occurred on approximately June 2, 2009, when Cottrell observed a delivery truck partially parked in the "one and only designated handicap space" available at the 135 East High Street location.  (Id. ¶ 21.)  Cottrell also observed that the truck was blocking the access aisle for that

_____

[1]  As another court in this District has explained, "[t]o further the rights of disabled persons, Holland and Cottrell actively observe commercial establishments to ensure that local business owners comply with laws and ordinances designed to protect handicapped persons.  When local businesses fail to meet their statutory obligations, Cottrell 'informs the proper authorities/agencies,' ... and 'signs citizen complaints regarding handicap parking and failure to provide access,'... Cottrell and Holland receive no financial compensation for their efforts."  Cottrell v. Heritages Dairy Stories, Inc., No. 09-1743, 2010 WL 3908567, at *1 (D.N.J. Sept. 30, 2010) (citations omitted).

[2]  Several paragraphs of Plaintiffs' First Amended Complaint are misnumbered, duplicate paragraphs.  For example, on page four, the consecutive paragraphs are numbered ¶ 18, ¶ 19, ¶ 20, ¶ 21, ¶ 20 (again), ¶ 21 (again), ¶ 22, ¶ 23 and ¶ 24.  For the sake of clarity, when referring to a duplicative numbered paragraph, the Court will designate that paragraph using the letter "a" after the number, i.e., ¶ 21a.

handicap space. (Id.) Cottrell then entered Casa Rocie's "to request that the vehicle be removed." (Id. ¶ 21a.) Shortly thereafter, Cottrell spoke with Nicholson Jr., who had been stocking shelves in the grocery store, and she explained about where the truck was parked and requested its removal. (Id.) Accordingly to the First Amended Complaint, upon questioning by Cottrell, "Nicholson Jr. became angry and stated 'Stay off my property'" and gave Cottrell the middle finger. (Id. ¶ 22.) Cottrell then left the premises. (Id. ¶ 23.)

Plaintiffs allege that they observed and documented additional violations in December of 2009, February of 2010, and March of 2010. (Id. ¶¶ 24-28.) On March 31, 2010, when Holland was documenting a violation for obstructing access, Plaintiffs had another encounter with Nicholson Jr. (Id. ¶ 28.) According to Plaintiffs, as Holland was heading back to his car to leave, Nicholson Jr. approached Holland's vehicle, began knocking on the window, and managed to pull open the driver's side door of the vehicle. (Id. ¶ 29.) Apparently Holland was able to quickly pull the door closed and lock it, but Nicholson Jr. continued his

attempts to open the door.[3] (Id. ¶ 30.) Following the March 31,

2010, on April 9, 2010, Cottrell and Holland received "a ban

letter" by certified mail which purportedly stated "[Y]ou are not

to come on our property, if you are found on our property or

building we will make the appropriate complaints[.]"[4] (Id. ¶ 32.)

About one month later, on May 7, 2010, Holland signed a citizen's

complaint against Nicholson Jr. for disorderly conduct arising

out of the March 31, 2010 incident regarding the car door and the

window. (Id. ¶ 33.) Holland's disorderly conduct complaint

against Nicholson Jr. was heard in Glassboro Municipal Court

nearly eleven months later on February 14, 2011, and a municipal

court judge entered a "No Contact Order" against Nicholson Jr.

requiring him to stay away from Holland and his family.[5] (Id. ¶

---

[3]     Plaintiffs represent that at the time this occurred,
Cottrell was standing on the sidewalk "taking video of the
incident[.]" (Id. ¶ 31.)

[4]     Plaintiffs did not attach a copy of this "ban letter" to the
original complaint or the First Amended Complaint. Plaintiffs
did, however, attach a copy of this letter to their opposition
papers. (Pls.' Opp'n [Doc. No. 25] 26.) It is unclear whether
this letter was issued by Nicholson Jr. or Nicholson Sr. as it
was signed only "George Nicholson (owner)[.]" (Id.)

[5]     Although not attached to the First Amended Complaint,
Plaintiffs attached to their opposition a copy of the complaint-
summons issued to Nicholson Jr. regarding the March 31, 2010
incident. (Pls.' Opp'n 29-32.) At the bottom of this document,
in the area designated as "Court Action", there is a hand written

37.)

Even after Plaintiffs received the April 9, 2010 "ban letter" and despite the entry of the "No Contact Order" on February 14, 2011, Holland and Cottrell continued to monitor the access to handicap parking spaces at the 135 East High Street location from November 9, 2011 through March 8, 2012. (Id. ¶ 40.) They apparently observed that a cement stopper[6] was blocking access to the aisle for the handicap space for that entire period of time. (Id.) As a result, Cottrell documented this violation and filed yet another citizen complaint on February 15, 2012 for the failure to provide access based on the location of the cement stopper. (Id. ¶¶ 41-42.)

Plaintiffs now bring this action for alleged retaliation under the ADA and the NJLAD based on the "ban letter" Cottrell and Holland received on April 9, 2010. Plaintiff specifically allege that Defendants "engaged in impermissible retaliation against" them by "revoking their status as a business invitee's

---

notation which reads "No Contact w/ Holland or Cottrell[.]"  (Id. at 29-31.)

[6]    We take "cement stopper" to refer to the low, elongated cement block designed to stop a car's tires from extending too far into a parking space.

[sic] and/or banning them from the business premise." [7]  (Id. ¶

70; see also id. ¶ 74.)

## III. **DISCUSSION**

### A. **Standard for Motion to Dismiss Under Rule 12(b)(1)**

Defendants now move to dismiss Plaintiffs' complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and

---

[7]  Paragraphs 44-60 of the First Amended Complaint set forth in
great detail that prior to this suit - from March 2, 2012 through
April 26, 2012 – Nicholson Jr. filed thirty (30) citizen
complaints against Holland for alleged bicycle violations
regarding Holland's use of a bicycle while riding around downtown
Glassboro.
    Plaintiffs dedicate twelve paragraphs to detailing each
instance where Nicholson Jr. allegedly "stalked" or "harassed"
Plaintiffs throughout downtown Glassboro.  The First Amended
Complaint even indicates that the local police were called on at
least five of these occasions.  Plaintiffs subsequently filed
criminal charges against Nicholson Jr. for harassment, N.J. STAT.
ANN. § 2C:33-4(a), and stalking, N.J. STAT. ANN. § 2C:12-10(a)(1),
as a result of these incidents.  (Am. Compl. ¶¶ 57-58.)  To the
Court's knowledge, these charges are still pending in municipal
court.  (Id. ¶ 59.)
    The Court finds, however, that in large part these
paragraphs offer very little information relevant to Plaintiffs'
retaliation claims under the ADA and the NJLAD.  It is unclear
how these allegations relate to Plaintiffs' advocacy efforts on
behalf of disabled individuals.  Moreover, none of the incidents
alleged in paragraphs 44-60 occurred on the premises of the 135
East High Street location.  By contrast, Plaintiffs specifically
assert that Defendants' purported retaliation against them arose
from the issuance of the "ban letter" and the revocation of their
status as business invitees from that specific location.  In
light of the decision to grant leave to amend, any future
pleading should set forth the alleged connection between these
events and any retaliation claim  under the ADA and the NJLAD.

12(b)(6).  A motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) challenges the existence of a federal court's
subject matter jurisdiction.  "'When subject matter jurisdiction
is challenged under Rule 12(b)(1), the plaintiff must bear the
burden of persuasion.'"  Symczyk v. Genesis HealthCare Corp., 656
F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion to dismiss for lack of subject matter jurisdiction
may either (1) "attack the complaint on its face" or (2) "attack
the existence of subject matter jurisdiction in fact, quite apart
from any pleadings."  Mortensen v. First Fed. Sav. & Loan Ass'n,
549 F.2d 884, 891 (3d Cir. 1977).  "The defendant may facially
challenge subject matter jurisdiction by arguing that the
complaint, on its face, does not allege sufficient grounds to
establish subject matter jurisdiction."  D.G. v. Somerset Hills
School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  On a
facial attack, "the court must consider the allegations of the
complaint as true."  Mortensen, 549 F.2d at 891.  "A defendant
can also attack subject matter jurisdiction by factually
challenging the jurisdictional allegations set forth in the
complaint."  D.G., 559 F. Supp. 2d at 491.

Upon a factual attack, by contrast, the court need not

presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891). "The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed." D.G., 559 F. Supp. 2d at 491.

In the present motion, Defendants argue that Plaintiffs lack standing to bring retaliation claims under the ADA and the NJLAD and thus the Court lack subject matter jurisdiction over this case. Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of standing, since "standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997). A plaintiff must establish his or her standing to

bring a case in order for the court to possess jurisdiction over his or her claim.  Id.

To establish standing, Plaintiffs must demonstrate that (1) they "suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural, or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of – the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court"; and (3) "that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992); see also Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action.")

**B.    Standard for Motion to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all

well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  The Third Circuit has instructed district courts to conduct a two-part analysis in deciding a motion to dismiss.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

First, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler, 578 F.3d at 210-11 (citing Iqbal, 129 S. Ct. at 1949).  Second, a district court must "determine whether the facts alleged in the complaint are sufficient to show that

12

the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).

A court need not credit "'bald assertions'" or "'legal conclusions'" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant has the burden of demonstrating that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

However, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."

13

*Phillips*, 515 F.3d at 245; see also *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 444 (D.N.J. 2010) ("When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. ... A claim may be dismissed with prejudice, however, if amending the complaint would be futile.") (citation omitted).

IV.  **ANALYSIS**

A.  **Plaintiffs' Standing**

Cottrell and Holland are not unfamiliar litigants to this Court or to other courts within the District of New Jersey's Camden Vicinage.  Between them, Plaintiffs have filed approximately eighteen (18) lawsuits here in the past seven years.[8]  Nearly all of Plaintiffs' cases arise, at least in part

---

[8]    See, e.g., *Cottrell v. Glassboro Public School District*, Civ. Action No. 1:06-cv-01163-RMB-JS; *Holland v. Terra Nova*, Civ. Action No. 1:06-cv-04599-RMB-KMW; *Cottrell v. Nulin Auto Sales, Inc.*, Civ. Action No. 1:07-cv-05761-JHR-JS; *Cottrell v. Dante J. Masso & Sons, Inc.*, Civ. Action No. 1:08-cv-01700-JEI-AMD;

from, Plaintiffs' practice of monitoring and observing accessibility to handicap parking at local businesses in the area and reporting alleged violations by filing citizen's complaints against the vehicle owners or businesses themselves.

In some of the more recent cases brought by Plaintiffs, defendants have begun to challenge Plaintiffs' standing to assert their claims for retaliation. In this particular case, Defendants similarly contend that Plaintiffs have failed to plead standing pursuant to Article III's injury-in-fact requirement because they "fail to specify any dates in the past in which they were patrons at the Defendants' premises" other than dates when "their expressed intent was to document violations to form the

---

Cottrell v. Rowan University, Civ. Action No. 1:08-cv-01171-NLH-JS; Cottrell v. Good Wheels, Civ. Action No. 1:08-cv-01738-RBK-KMW; Cottrell v. Long Self Storage, Inc., Civ., Action No. 1:08-cv-02827-JHR-JS; Cottrell v. Zagami, LLC, Civ. Action No. 1:08-cv-03340-JEI-AMD; Cottrell v. J&R Discount Liquor Gallery, Inc., Civ. Action No. 1:08-cv-05418-NLH-KMW; Cottrell v. Woodbury Nissan, Inc., Civ. Action No. 1:09-cv-00240-JBS-AMD; Holland v. Simon Property Group, Inc., Civ. Action No. 1:09-cv-00914-RMB-AMD; Cottrell v. Heritages Dairy Stores Inc., Civ. Action No. 1:09-cv-01743-RBK-JS; Cottrell v. Bobs Little Sport Shop, Inc., Civ. Action No. 1:09-cv-01987-JBS-JS; Cottrell v. Matt Blatt, Inc., Civ. Action No. 1:11-cv-00610-JHR-AMD; Cottrell v. Fosters, Civ. Action No. 1:11-cv-06662-NLH-AMD; Cottrell v. Norman, Civ. Action No. 1:12-cv-01986-NLH-JS; Cottrell V. Nicholson Properties LLC, Civ. Action No. 1:12-cv-02128-NLH-KMW (the present suit); Cottrell v. Recreation Center LLC, Civ. Action No. 1:13-cv-02847-NLH-KMW.

basis of municipal court complaints[.]" (Defs.' Mem. 10.)

Defendants further contend that the First Amended Complaint "is

vague as to [Plaintiffs'] future intent to enter Defendants'

premises." (Id. at 11.) According to Defendants, Plaintiffs

lack of specificity with regard to their future plans to utilize

the premises amount to "some day" intentions which do not support

actual or imminent injury. (Id.) Defendants also argue that any

claimed intent to return is disingenuous in light of the fact

that Plaintiffs sought and obtain a "No Contact Order" against

Nicholson Jr. – the owner of the property in question. (Id.)

In examining Defendants' challenge to Plaintiffs' standing

to bring claims for retaliation under the ADA, this Court, like

others in this Vicinage, recognizes that the only relief

available to Plaintiffs on such claims is prospective injunctive

relief. See, e.g., Cottrell v. Heritages Dairy Stores, Inc., No.

09-1743, 2010 WL 3908567, at *4 (D.N.J. Sept. 30, 2010) ("The

only relief available to a plaintiff for a retaliation claim

under the ADA is injunctive relief."); Cottrell v. Bobs Little

Sport Shop, Inc., No. 09-1987, 2010 WL 936212, at *3 n.4 (D.N.J.

Mar. 11, 2010) (recognizing that the "only relief available for

Plaintiff's retaliation claims against Defendants as a public

accommodation under the ADA" is prospective injunctive relief)

(citing 42 U.S.C. §§ 12203, 12188(a)); Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 n.1 (D.N.J. May 20, 2009) (same).  Therefore, to have standing for the purposes of obtaining prospective injunctive relief, Plaintiffs here must "establish a real and immediate threat" that they will suffer a future injury.  Brown v. Fauver, 819 F.2d 395, 400 (E.D. Pa. 1987) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

To establish a real and immediate threat of future injury, courts in this Vicinage require Plaintiffs to adequately alleged both "prior patronage of and a concrete desire to continue to patronize Defendants[']" business establishment.  See, e.g., Cottrell v. Matt Blatt, Inc., No. 11-610, 2011 WL 2975482, at *4 (D.N.J. July 21, 2011) (concluding that Holland and Cottrell "demonstrated that they suffered an injury in fact" where they asserted (1) prior patronage of a car dealership for their own shopping needs and to accompany friends purchasing cars, and (2) a concrete desire to continue to patronize the dealership in order to browse inventory, compare pricing, or make an offer on a car); see also Cottrell v. Zagami, LLC, No. 08-3340, 2010 WL 2652229, at *2 (finding that "[b]ecause Plaintiffs have alleged past patronage [(previously dining at that establishment)] and a

concrete desire to dine at Defendant's nearby establishment in the future [(including to accompany friends who dine there)], the Court is satisfied that Plaintiffs have standing to bring this suit").

However, in circumstances where Plaintiffs have failed to adequately allege facts supporting the real and immediate threat of future injury, several courts have dismissed these complaints without prejudice for lack of standing with respect to one or both Plaintiffs.  See, e.g., Bobs Little Sport Shop, 2010 WL 936212, at *3-4 (dismissing Plaintiffs' retaliation claims under the ADA and the NJLAD without prejudice based, in part, on Plaintiffs' failure to allege concrete plans to return to the sports shop); Cottrell v. Good Wheels, No. 08-1738, 2009 WL 3208299, at *5-6 (D.N.J. Sept. 28, 2009) (dismissing the amended complaint without prejudice as to Cottrell because the court was "not satisfied that [she] suffered an injury in fact as a result of having her business-invitee status revoked" since she failed to alleged that she "ever entered the Good Wheels facility at any time in the past" or that "she intend[ed] to do so at any time in the future"); see also Heritages Dairy Stores, 2010 WL 3908567, at *4 (dismissing Cottrell and Holland's retaliation claims without prejudice for lack of standing relying on Bobs Little

<u>Sport Shop</u>).

Here, Plaintiffs' First Amended Complaint alleges the following facts relevant to the Court's resolution of the standing issue. Plaintiffs contend that Defendants have engaged in impermissible retaliation against them in violation of the ADA and the NJLAD "by revoking their status as ... business invitee[s] and/or banning them from the business premise" at the 135 East High Street location.[9] (Am. Compl. ¶ 70; <u>see also</u> <u>id.</u> ¶ 73.) Plaintiffs assert that the following businesses are located at that location which is just one block from Plaintiffs' home: the Hollybush Car Wash, the Hollybush Laundromat, and Casa Rocie's Mexican grocery store. (<u>Id.</u> ¶¶ 19-20, 64.) With respect to Casa Rocie's, Plaintiffs alleged only that they both "love to cook and enjoy Mexican and Latin American cuisine and would like to patronize Casa Rocie's" which is a "product based business[.]" (<u>Id.</u> ¶ 63.)

As to the Hollybush Laundromat, Plaintiffs assert that the

---

[9]     The Court notes that the revocation of their status as business invitees has not prevented Plaintiffs from continuing their advocacy efforts. The First Amended Complaint demonstrates that Plaintiffs observed and documented parking access violations and signed citizen's complaints regarding these violations on multiple occasions after the April 9, 2010 ban letter was issued including on December 29, 2010, and from November 9, 2012 to March 8, 2012. (Am. Compl. ¶¶ 34, 36, 40-42.)

Laundromat is "a self serve [sic] business that is open 7 days a week from 5am-11pm" and that they "would like to use the laundry facilities" at the Laundromat because "[t]hey do not have a clothes dryer" at home which proves difficult "especially ... on rainy days and during the winter months." (Id. ¶ 62.) Finally, the First Amended Complaint asserts that Hollybush Car Wash is also a "self serve [sic] business, that is open 7 days a week from 5am-11pm." (Id. ¶ 61.) Plaintiff Holland alone asserts that he "has been a past customer of the Hollybush Car Wash and would like to return to use the facilities, especially in the winter months." (Id.)

The Court addresses the standing of each of these Plaintiffs in turn.

### (1) Plaintiff Cottrell

As set forth supra, to establish a real and immediate threat of future injury in order to obtain prospective injunctive relief here, Cottrell needs to demonstrate both prior patronage of, and a concrete desire to patronize these businesses in the future. Plaintiffs' First Amended Complaint, however, completely fails to allege any past patronage by Cottrell of any of the three business located at Defendants' 135 East High Street location. As in Good Wheels, 2009 WL 3208299, at *6, Cottrell fails to

allege that she has ever even entered either the Hollybush Car Wash or the Hollybush Laundromat. Moreover, Cottrell's only allegation as to Casa Rocie's is that she entered the store on June 2, 2009 for the sole purpose of "request[ing] that the vehicle [parked outside obstructing handicap parking access] be removed." (Am. Compl. ¶¶ 21, 21a.) Cottrell makes absolutely no allegation that she has ever patronized any of the three businesses at the 135 East High Street location for the purposes of shopping, browsing inventory, making a purchase, utilizing the laundry or car wash facilities, or assisting a friend in doing any of the above. As set forth in the First Amended Complaint, it is clear that her singular entry into Casa Rocie's was to report a parking violation, not as a business invitee.

With respect to Cottrell's desire and concrete plans to patronize these businesses in the future, the First Amended Complaint is also completely devoid of any assertion that Cottrell has plans to patronize the Hollybush Car Wash at any time in the future. Moreover, the Court is not satisfied that the allegations regarding her future plans to patronize both the Hollybush Laundromat and Casa Rocie's are sufficiently concrete to establish her standing here. Cottrell simply alleges that she "would like to use the laundry facilities" because she does not

have a clothes dryer and that she "would like to patronize Casa Rocie's" because she loves to cook and enjoys Mexican and Latin American cuisine. (Am. Compl. ¶¶ 62-63.) As threshold matter, the Court finds these assertions to be vague and conclusory. They constitute the same type of nondescript, unspecified "some day" intentions that the Supreme Court rejected in Lujan[10] and the Court must similarly reject them here.

Accordingly, the Court is not satisfied that Cottrell has standing to bring claims under the ADA at this time because she fails to allege facts sufficient to demonstrate that there is a real and immediate threat of future injury to her as a result of the revocation of her business invitee status. As currently alleged in the First Amended Complaint, the revocation of Cottrell's business invitee status has not caused Cottrell a "concrete and particularized" and "actual or imminent" injury because: (1) she has never patronized any of the businesses

---

[10] See Lujan, 504 U.S. at 564 (rejecting "affiants' profession of an 'inten[t]' to return to the places they had visited before — where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species — [as] simply not enough [to allege injury]. Such 'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original).

located at the 135 East High Street location before; and (2) her plans to return are simply conclusory "some day" intentions. The Court will therefore grant Defendants' motion and dismisses the complaint without prejudice as to Cottrell for lack of standing.

        *(2)  Plaintiff Holland*

Like Cottrell, Holland also must establish a real and immediate threat of future injury in order to obtain prospective injunctive relief here by demonstrating both prior patronage of, and a concrete desire to patronize these businesses in the future.  As to Holland's prior patronage of any of the businesses at the 135 East High Street location, like Cottrell, the First Amended Complaint fails to allege that Holland has ever patronized either the Hollybush Laundromat or Casa Rocie's. Holland does not make any allegation that he has ever patronized either of these businesses at the 135 East High Street location for the purposes of shopping, browsing inventory, making a purchase, utilizing the laundry facilities, or assisting a friend in doing any of the above.  As set forth in the First Amended Complaint, the only prior patronage Holland asserts is a vague, overgeneralized allegation that he "has been a past customer of the Hollybush Car Wash[.]"  (Am. Compl. ¶ 61.)  Holland does not offer any additional facts regarding the date, frequency or

nature of his prior patronage of the car wash.

However, even assuming that this assertion is sufficient to allege past patronage for purposes of standing, Holland's ability to establish standing here suffers from the same deficiencies as Cottrell on the issue of his concrete plans to patronize these businesses in the future. In fact, Holland makes the identical vague and conclusory allegations regarding his intentions to patronize the Hollybush Laundromat and Casa Rocie's that Cottrell makes. (See id. ¶¶ 62-63.) As to the Hollybush Car Wash, Holland alleges only that he "would like to return to use the facilities, especially in the winter months." (Id. ¶ 61.) For the same reasons set forth supra as to Cottrell, the Court also finds that these identical allegations made by Holland are similarly insufficient to establish a concrete desire to patronize these businesses in the future. Much like Cottrell's assertions, Holland's assertions are nondescript and fail to describe actual, specific plans for future patronage. Again they are the type of "some day" intentions rejected in Lujan and the Court rejects them as to Holland, just as it did to Cottrell.[11]

---

[11]    In their opposition, Plaintiffs assert that they "are a family unit" and that they "have missed out on social events, shopping, inquiring about services and goods, or just using the bathroom facilities ... all because of being banned for tickets [they] have signed against the business for denial of access."

As currently alleged in the First Amended Complaint, the
revocation of Holland's business invitee status has not caused
Cottrell a "concrete and particularized" and "actual or imminent"
injury because: (1) he has only patronized one of the businesses
located at 135 East High Street before under circumstances
lacking any detail or specificity; and (2) his plans to patronize
these establishments in the future are nothing more than "some

_____

(Pls.' Opp'n 2.)  Initially, the Court notes that this assertion
is generalized and does not identify in any detail how Plaintiffs
have missed out on social events, shopping opportunities, and the
like with respect to the three business located at the 135 East
High Street location.  Moreover, even assuming that these
allegations relate to the actions of Defendants in this case, they
are not included in the complaint and cannot be considered for the
purposes of this motion.  See Bobs Little Sports Shop, 2010 WL
936212, at *3.

    We note that there is an inherent conflict between Holland's
attempts to keep Nicholson Jr. away from him and his family and
Holland's and Cottrell's alleged desire to return to Nicholson
Jr.'s property at 135 East High Street to patronize the businesses
there. On the one hand, one might consider these efforts to
undercut any claim of a future intent to return to the subject
premises.  On the other hand, to incorporate these facts into the
standing analysis might have the unintended effect of encouraging
retaliation as a tactic to defeat standing.  Accordingly, we do
not consider the apparently ongoing dispute between the parties
relevant to the issue of jurisdictional standing.  The inquiry
regarding a public establishment should be whether, assuming
cordial relations, the plaintiff has a real intention to patronize
the business in the future.

day" intentions.  The Court will therefore grant Defendants'
motion and dismiss the complaint without prejudice as to Holland
for lack of standing because Holland fails to allege facts
sufficient to demonstrate that there is a real and immediate
threat of future injury to him as a result of the revocation of
his business invitee status.[12]

---

[12]    In light of the Court's determination that Plaintiffs lack
Article III standing here on their ADA claim, the Court will
decline to exercise jurisdiction over Plaintiffs' NJLAD claim
under 28 U.S.C. § 1367.  Additionally, the Court need not evaluate
whether Plaintiffs have failed to state a claim upon which relief
can be granted under Federal Rule of Civil Procedure 12(b)(6).
See Danvers Motor Co., Inc. v. Ford Motor Co., 186 F. Supp. 2d
530, 538 (D.N.J. 2002) (citing ACLU-N.J. v. Township of Wall, 246
F.3d 258, 261 (3d Cir. 2001)) ("If plaintiffs do not possess
Article III standing, both the District Court and the Court of
Appeals lack subject matter jurisdiction to address the merits of
plaintiffs' case.").

    The Court also notes that there is a motion for
reconsideration pending by Holland regarding the Court's previous
revocation of Holland's ability to proceed in forma pauperis in
this action.  Given that the Court is dismissing the complaint
without prejudice, the pending motion for reconsideration will be
denied as moot.  Mr. Holland is reminded that in forma pauperis
applications must be signed under penalty of perjury.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants motion to dismiss will be granted.  Plaintiffs, however, will be granted leave to file a motion to amend their complaint within twenty (20) days of the date of this Opinion pursuant to Federal Rule of Civil Procedure 15 in order to assert sufficient facts to meet the requirements of standing for their claims.[13]  An Order consistent with this Opinion will be entered.


Dated: <u>December 23, 2013</u>          <u>  s/ Noel L. Hillman    </u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[13]    If Plaintiffs choose to file a motion to amend their complaint, they must attach a copy of the proposed second amended complaint to their motion in accordance with Local Civil Rule 7.1(f).  L. Civ. R. 7.1(f) ("Upon filing of a motion for leave to file an amended complaint ... the moving party shall attach to the motion a copy of the proposed pleading or amendments").