**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

MARYANN COTTRELL and RICHARD
G. HOLLAND,                          No. 1:12-cv-2128 (NLH/KMW)

          Plaintiffs,              **OPINION**

     v.

NICHOLSON PROPERTIES LLC,
doing business as
HOLLYBUSH CAR WASH and
HOLLYBUSH LAUNDROMAT, GEORGE
NICHOLSON, SR., and GEORGE
NICHOLSON, JR.,

          Defendants.

_____

**APPEARANCES:**

SANDER D. FRIEDMAN
WESLEY GLENN HANNA
LAW OFFICE OF SANDER D. FRIEDMAN, LLC
125 NORTH ROUTE 73
WEST BERLIN, NJ 08091
     On behalf of Plaintiffs

LEWIS G. ADLER
LAW OFFICE OF LEWIS ADLER
26 NEWTON AVENUE
WOODBURY, NJ 08096
     On behalf of Defendants

SETH CLEMENT HASBROUCK
COSTA VETRA LAROSA & COSTA
P.O. BOX 1615
2039 BRIGGS ROAD
MOUNT LAUREL, NJ 08054
     On behalf of Defendants

**HILLMAN, District Judge**

This matter concerns Plaintiffs' allegations that Defendants retaliated against them for documenting violations of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). Before the Court is Defendants' Motion for Summary Judgment and what Plaintiffs style as a "Cross-Motion for Adverse Inference and Attorneys' Fees." For the reasons that follow, the Court will grant Defendants' Summary Judgment Motion and deny Plaintiffs' Cross-Motion.

**I.**

Unless otherwise indicated, the Court takes its facts from Defendants' Statement of Material Facts and Plaintiff's Response. Defendant Nicholson Properties is an organization doing business as Hollybush Laundromat and Hollybush Car Wash in Glassboro, New Jersey. Defendant George Nicholson, Sr. is the owner of Nicholson Properties, and Defendant George Nicholson, Jr. is an employee of Nicholson Properties. Hollybush Car Wash and Hollybush Laundromat are both self-service businesses. Casa Rocie's Grocery is another business on the property.

Plaintiff Maryann Cottrell is the mother of a disabled child. She is lawfully permitted to park her car in handicap accessible parking spaces reserved for the disabled. Plaintiff Richard Holland also lives in the household with Cottrell. As

advocates for the disabled, Plaintiffs "assess and document handicap access with the public accommodations that [they] come[] in contact with during [their] daily activities."

At her deposition, Cottrell explained that on June 2, 2009, she "observed a vehicle that was delivering product to the Mexican grocery store . . . in their one and only handicapped spot." (Tr. at 8). Cottrell "went inside to notify someone in the store." (Tr. at 8). The woman at the desk directed her to a gentleman who identified himself as George Nicholson, who told her "to stay off his property." (Tr. at 8).[1] Cottrell testified that she thereafter stayed off the property, but took videos "[t]hrough the course of observing violations from the sidewalk." (Tr. at 9). Holland testified similarly.

Holland also testified that he was on the property again on March 31, 2010 because of "a car that was improperly parked, making it difficult for anybody to get to the access to the ramp." (Tr. at 16-17). There was an altercation between Holland and Nicholson, Jr. at Holland's car, and he too was told to stay off the property.[2]

---

[1]   Cottrell's testimony did not identify whether this was Nicholson, Sr. or Nicholson, Jr.  It appears from the video provided by Plaintiffs that the person is Nicholson, Jr.

[2]   Holland's testimony does not specifically identify who he had the altercation with by his car.  Again, it appears from the video provided by Plaintiffs that the person is Nicholson, Jr.

3

Cottrell received a written notice to stay off the property on April 9, 2010. Nicholson, Jr. described Cottrell and Holland as "aggressive" and "looking for a fight" whenever they came on the premises. Nicholson, Jr. stated that Cottrell and Holland were banned from the property because of what he characterized as annoying behavior.

Plaintiff filed an April 9, 2012 Complaint with the Court. The Court's December 23, 2013 Opinion and Order granted Defendants' Motion to Dismiss but also granted leave for Plaintiffs to file a motion to amend. The December 23, 2013 Opinion focused on Plaintiffs' standing to bring the lawsuit. The Court found Cottrell failed to allege any past patronage of Defendants' businesses. The Court further found the First Amended Complaint's allegations about future patronage insufficiently concrete. The Court found the allegations regarding Holland's patronage to suffer from the same deficiencies. On that basis, the Court granted the motion to dismiss without prejudice.

In the Court's October 22, 2014 Opinion and Order, the Court found Plaintiffs' Second Amended Complaint sufficiently alleged standing and granted their motion to amend. Plaintiffs' Second Amended Complaint brings two claims: (1) retaliation in violation of the ADA and (2) retaliation in violation of the NJLAD.

In the Court's February 21, 2017 Opinion and Order, the Court considered another attack on standing from Defendants. Construing it as a motion for reconsideration, the Court declined to reconsider its decision. The Court further declined to consider Defendants' attack on Plaintiffs' ability to withstand the burden-shifting analysis in a retaliation claim. The Court therefore denied Defendants' Motion to Dismiss. Defendants filed a January 26, 2018 Motion for Summary Judgment. Plaintiffs filed their opposition and a Cross-Motion for Adverse Inference and Attorneys' Fees on February 21, 2018.

While this case was pending, and shortly prior to the filing of the pending Motion for Summary Judgment, Defendants issued a November 3, 2017 letter lifting the ban from the property "effective immediately."

## II.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert a federal statutory claim under the ADA. The Court has supplemental jurisdiction over the NJLAD claim pursuant to 28 U.S.C. § 1367.

## III.

The Court begins by considering whether Plaintiffs have Article III standing. This Court has considered Defendants' argument that Plaintiffs lack standing several times before at the motion to dismiss stage. The Court will consider

Plaintiffs' standing again, now with reference to the heightened

standard required in assessing a summary judgment motion.[3]

The Constitution confines the power of federal courts as

extending only to "Cases" and "Controversies." U.S. Const.,

art. III, § 2. "No principle is more fundamental to the

judiciary's proper role in our system of government than the

constitutional limitation of federal-court jurisdiction to

actual cases or controversies." Raines v. Byrd, 521 U.S. 811,

818 (1997) (quoting Simon v. E. Ky. Welfare Rights Org., 426

U.S. 26, 37 (1976)).

There are three well-recognized elements of Article III
standing: First, an "injury in fact," or an "invasion of

---

[3]     "A plaintiff must establish standing 'in the same way as
any other matter on which the plaintiff bears the burden of
proof, i.e., with the manner and degree of evidence required at
the successive stages of the litigation.'" Brown v. Showboat
Atl. City Propco, LLC, No. 08-5145, 2010 U.S. Dist. LEXIS
133106, at *23-24 (D.N.J. Dec. 16, 2010) (quoting Lujan v. Defs.
of Wildlife, 504 U.S. 555, 561 (1992)). "At each subsequent
stage in the litigation, the quantum of proof necessary to
establish standing increases." Id. at *24 (citing W.G. Nichols,
Inc. v. Ferguson, No. 01-834, 2002 U.S. Dist. LEXIS 10707, at *9
n.15 (E.D. Pa. June 7, 2002)). "At the summary judgment phase a
plaintiff must prove standing through specific facts by
affidavit, deposition testimony or other evidence." Id.
(quoting Tandy v. City of Wichita, 380 F.3d 1277, 1284 (10th
Cir. 2004)). "The failure to demonstrate each element of
standing results in granting summary judgment in favor of a
defendant." Id.
     The Court explicitly noted in its October 22, 2014 Opinion:
"[T]he Court accepts as true the allegations in the proposed
Second Amended Complaint and does not determine the credibility
and veracity of such allegations. The Court's finding as to
standing at this stage is without prejudice to Defendants' right
to challenge Plaintiffs' standing at a later stage of the case."

a legally protected interest" that is "concrete and particularized."  Second, a "causal connection between the injury and the conduct complained of[.]"  And third, a likelihood "that the injury will be redressed by a favorable decision."

In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting Lujan, 504 U.S. at 560, 561).  "Although all three elements are 'constitutionally mandated, the injury-in-fact element is often determinative.'"  Brown, 2010 U.S. Dist. LEXIS 133106, at *26 (quoting Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 138 (3d Cir. 2009)).  The injury in fact requirement has been described as "a conglomerate of three components": "[A] plaintiff must first 'show that he or she suffered "an invasion of a legally protected interest."'  Second, a plaintiff must show that the injury is both 'concrete and particularized.' Third, a plaintiff must show that his or her injury is 'actual or imminent, not conjectural or hypothetical.'"  Mielo v. Steak 'N Shake Operations, Inc., No. 17-2678, 2018 U.S. App. LEXIS 20793, at *12-13 (3d Cir. July 26, 2018) (citation omitted) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)).

As this Court noted in its previous opinion, the only relief available to Plaintiffs on their ADA claim is prospective injunctive relief.  See, e.g., Cottrell v. Heritages Dairy Stores, Inc., No. 09-1743, 2010 WL 3908567, at *4 (D.N.J. Sept. 30, 2010) ("The only relief available to a plaintiff for a

retaliation claim under the ADA is injunctive relief.");

Cottrell v. Bobs Little Sport Shop, Inc., No. 09-1987, 2010 WL
936212, at *3 n.4 (D.N.J. Mar. 11, 2010) (recognizing that the
"only relief available for Plaintiff's retaliation claims
against Defendants as a public accommodation under the ADA" is
prospective injunctive relief) (citing 42 U.S.C. §§ 12203,
12188(a)); Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL
1416044, at *3 n.1 (D.N.J. May 20, 2009) (same).

"A plaintiff's satisfaction of the injury in fact
requirement varies depending on whether he seeks retrospective
or prospective relief." Brown, 2010 U.S. Dist. LEXIS 133106, at
*26 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102-03
(1983)). "To satisfy the injury in fact requirement when
seeking prospective injunctive relief, the plaintiff must
demonstrate a 'real and immediate threat' of future injury."
Id. at *26-27 (quoting Access 4 All, Inc. v. Absecon Hosp.
Corp., No. 04-6060, 2006 U.S. Dist. LEXIS 79264, at *5 (D.N.J.
Oct. 30, 2006)).

> The Third Circuit has opined that "[p]ast exposure to
> illegal conduct does not in itself show a present case
> or controversy regarding injunctive relief. . . . [I]n
> order to obtain standing for prospective relief, the
> plaintiff must establish a real and immediate threat
> that he would again be [the victim of the allegedly
> unconstitutional practice]."

Id. at *27 (alterations in original) (quoting Brown v. Fauver,
819 F.2d 395, 400 (3d Cir. 1987)). "In other words, injunctive

relief is only appropriate when the Plaintiff establishes a sufficient likelihood that he will be wronged again in a similar fashion." Id. (citing D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008)). "'Some day' intentions without any description of concrete plans or any indication beyond mere speculation on when some day will occur, does not support a finding for 'actual or imminent' injury." Id. (quoting Lujan, 504 U.S. at 564).

"To determine whether a future injury is concrete and particularized, several New Jersey District Courts," including this Court in considering Defendants' earlier motion to dismiss, "have applied a four-factor test that focuses on the likelihood of plaintiff's return to the defendant's place of public accommodation." Id. at *29. "The four factors include: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Id. "The totality of these four factors helps the court determine whether a plaintiff establishes a concrete and particularized threat of injury that is capable of repetition." Id.

Beginning with the first factor – Plaintiffs' proximity to the property – Plaintiffs submitted an exhibit containing a print out of Google Maps, showing the distance from Plaintiffs'

residence to Defendants' property.  The Certification of Wesley Hanna states that it "shows that the distance between the two is approximately one third of a mile and a five minute walk."[4] While Plaintiffs have submitted evidence of their proximity to the property, they have not provided evidence of their frequency of nearby travel, although one can assume the closeness of the property implies frequency of nearby travel.  These factors weigh in Plaintiffs' favor.

The Court turns to factors two and three – past patronage and future plans to return to the property.  Beginning with Cottrell, she testified at her deposition to visiting the property in June 2009.  Cottrell did not provide a reason for her visit, only noting that "the day I went there, I observed a vehicle . . . in their one and only handicapped spot."  Cottrell also testified as to her plans to return.  The following exchange occurred at Cottrell's deposition:

> Q.   . . . You allege you want access back to Holly Bush Carwash, that shopping center?
>
> A.   Yes.
>
> Q.   Have you ever used any of the facilities there?
>
> A.   Shortly after it was opened, I was banned.  I didn't have the opportunity to.
>
> Q.   Before you were banned, had you used anything

---

[4]    The Exhibit itself represents an even shorter three-minute walk.

there?

A.   Before I was banned, Casa Rosie's . . . had just opened.

Q.   How long had it been opened prior to you being banned?

A.   That just opened up because they had just started stocking the store as I went in there.  It was only opened a short while.

Q.   What about the car wash?

A.   I don't own a car.

     . . . .

A.   But at the laundromat, I'm not sure what time that opened up first or second.

Q.   You hadn't used any of the facilities?

A.   . . . [S]hortly after that, my washer broke and I could have used it, but I was banned.

Q.   Okay.  What about now?  Do you have a washer and dryer?

A.   I have a washer and dryer.

Q.   Have you ever shopped in the Mexican store?

A.   Any Mexican store?

Q.   Yeah.  That's how Mr. Holland described it, as a Mexican store.

A.   Any Mexican store?  I don't know of any Mexican store in this area.

Q.   How about for any Hispanic foods?

A.   I shop in the Hispanic section of Shop-Rite, or they have also Aldi's and Sav-A-Lot.

Q.   Mm-hmm?

A.   But since it's convenient, I would go there.

Q.   You say "since it's convenient" –

A.   Yeah, it's right around the corner from my home.

In Holland's deposition, he stated he was at the property in June 2009 and March 2010 "because there was a car improperly parked." He also stated he had been to the property before to use the car wash "[t]wo or three times." It is agreed in the Statements of Material Facts that "Plaintiff Holland has been a past customer of Hollybush Car Wash and would like to return to use the facilities right now, during the winter months." When asked whether there was "[a]ny other reason why [he] would go to that shopping center," he responded: "I think I've been in that Mexican store to see what they have. . . . I don't think I've bought anything that I can remember, just to see what it's like."

It is agreed between the parties that Plaintiffs "love to cook and enjoy Mexican and Latin American cuisine and would like to patronize Casa Rocie's immediately after, when the ban is lifted." It is further agreed in the Statements of Material Facts that "Plaintiffs do not have a clothes dryer" and that Plaintiffs "would use the laundry faculties today, but can not because they are banned. When the ban is lifted Plaintiffs will

use Hollybush Laundromat immediately after."[5]

Plaintiffs have not made the strongest showing of an injury in fact, but the Court finds Plaintiffs have provided sufficient evidence to survive this challenge on summary judgment. Plaintiffs' showing is particularly weak with regard to past patronage (and not particularly strong on their showing of definitive future plans to visit). However, "New Jersey District Courts only intend the factor test to serve as a guide for whether a plaintiff established an intent to return to the defendant's place of business." Brown, 2010 U.S. Dist. LEXIS 133106, at *41-42. Taking all of the evidence before the Court together, the Court finds Plaintiffs have made a sufficient showing on the four-factor test.[6]

---

[5] However, in her deposition, Cottrell testified that while she was banned her "washer broke" and she "could have used" the laundromat, but she now owns a washer and dryer.

[6] Neither party has disputed the applicability of the four-factor test the Court has previously applied and is applying in this Opinion. The Court acknowledges that this test has not been adopted by the Third Circuit, although it has been widely used in the District of New Jersey and by other courts. See Gniewkowski v. Lettuce Entertain You Enters., 251 F. Supp. 3d 908, 914 n.1 (W.D. Pa. 2017). However, the Court's conclusion on standing comports with the guidance that has been given by the Third Circuit on this issue and with the broader caselaw regarding a concrete injury in fact. See, e.g., Mielo, 2018 U.S. App. LEXIS 20793, at *17 n.15 ("Plaintiffs contend they are currently 'deterred from returning to [Steak 'n Shake] facilities.' This allegation is supported by record evidence illustrating that Plaintiffs have visited many Steak 'n Shake restaurant locations in the past, and that Plaintiffs enjoy the food offered at those restaurants. In this sense, the injury

Plaintiffs have adequately shown there to be at least a question of fact as to whether there is a real possibility of them being wronged in the future. The Court concludes that, at the very least, a factual dispute exists as to whether Plaintiffs have suffered an injury in fact.[7]

As to the remaining two prongs of Article III standing, the Court finds causation easily satisfied. Related to redressability, Defendants argue this matter is moot because the ban was lifted on November 3, 2017. The Court rejects this argument. "As many courts have noted, '[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways.'" Cottrell v. Good Wheels, No. 08-1738, 2011 U.S. Dist. LEXIS 26646, at *15 (D.N.J. Mar. 15, 2011), reconsideration denied by No. 08-1738, 2011 U.S.

_____

providing Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent – it is actual, in that this allegedly unlawful deterrence is something that Plaintiffs are currently suffering." (citations omitted))).

[7] Plaintiffs ask the Court to find a "statutory injury" here pursuant to Horizon, 846 F.3d 825. This argument requires the Court's analysis of both Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016) and the Third Circuit's interpretation of Spokeo in Horizon. Plaintiffs urge the Court "to find that Congress' passage of the Americans with Disabilities Act included their recognition that being retaliated against is a sufficient injury to confer standing to bring a private cause of action" pursuant to Horizon. Finding Plaintiffs have made a sufficient showing of an injury in fact under the traditional Article III framework, the Court does not consider this argument.

Dist. LEXIS 85194 (D.N.J. Aug. 3, 2011), aff'd, 458 F. App'x 98

(3d Cir. 2012) (alterations in original) (quoting La. Counseling

& Family Servs., Inc. v. Makrygialos, LLC, 543 F. Supp. 2d 359,

366 (D.N.J. 2008)).  "Indeed, voluntary cessation will only

render a case non-justiciable where it can be said with

assurance that there is no reasonable expectation that the

alleged violation will recur, and interim relief or events have

completely and irrevocably eradicated the effects of the alleged

violation."  Id. (citing Friends of the Earth, Inc. v. Laidlaw

Envtl. Servs., (TOC), Inc., 528 U.S. 167, 189 (2000)).  The

lifting of the ban within the last year of this case, initiated

in 2012, does not assure this Court that another alleged

violation will not occur.  See id. at *15-16 ("The timing of

Defendants' offer to rescind, as well as the ease by which

Defendants could conceivably re-institute the ban, convince the

Court that the alleged injury could reasonably recur absent the

requested relief.").

## IV.

Before considering the merits of Plaintiffs' retaliation

claim, the Court considers Plaintiffs' argument that they are

entitled to an adverse inference based on Defendants failure to

produce certain videos and failing to identify certain

witnesses.

The Court first addresses the videos that were not

produced.[8]  "Spoliation occurs where 'the evidence was in the

party's control; the evidence is relevant to the claims or

defenses in the case; there has been actual suppression or

withholding of evidence; and, the duty to preserve the evidence

was reasonably foreseeable to the party.'"  Indem. Ins. Co. of

N. Am. v. Electrolux Home Prods., 520 F. App'x 107, 111 (3d Cir.

2013) (quoting Bull v. United Parcel Serv., Inc., 665 F.3d 68,

73 (3d Cir. 1995)).  "The unexplained failure or refusal of a

party to judicial proceedings to produce evidence that would

tend to throw light on the issues authorizes, under certain

circumstances, an inference or presumption unfavorable to such

party." Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d

Cir. 1983).  "For the rule to apply, it is essential that the

evidence in question be within the party's possession or

control." Id.  "Further, it must appear that there has been an

actual suppression or withholding of the evidence; no

unfavorable inference arises when the circumstances indicate

that the document or article in question has been lost or

accidentally destroyed, or where the failure to produce it is

otherwise properly accounted for." Id.

The videos Plaintiffs are concerned with appear to be from

2009 and early 2010.  This lawsuit was not filed until over two

---

[8]    Plaintiffs indicate that their videos, which have been
produced, show Defendants taking videos of their own.

years later – on April 9, 2012.  While Defendants' conduct that

Plaintiffs identify as "harassment" and "stalking" continued

into 2012, those allegations were not added until Plaintiffs

filed their Second Amended Complaint in 2014.  Plaintiffs have

not shown a fraudulent intent or any other circumstances which

convince the Court that there has been "actual suppression or

withholding" of any videos.[9]  The Court, in its discretion, finds

an adverse inference inappropriate here.

        As to the failure to identify witnesses seen in the videos,

Federal Rule of Civil Procedure 37(c)(1) states:

> If a party fails to provide information or identify a
> witness as required by Rule 26(a) or (e), the party is
> not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless
> the failure was substantially justified or is harmless.
> In addition to or instead of this sanction, the court,
> on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses,
>      including attorney's fees, caused by the
>      failure;
>
> (B)  may inform the jury of the party's failure;
>      and
>
> (C)  may  impose  other  appropriate  sanctions,

---

[9]    In any event, "[t]here is no rule of law mandating a
particular sanction upon a finding of improper destruction or
loss of evidence; rather, such a decision is left to the
discretion of the court."  Kounelis v. Sherrer, 529 F. Supp. 2d
503, 520-21 (D.N.J. 2008) (quoting Hawa Abdi Jama v. Esmor Corr.
Servs., No. 97-3093, 2007 U.S. Dist. LEXIS 45706, at *126
(D.N.J. June 25, 2007)) ("[A] magistrate judge may, despite a
finding that all of the elements entitling a party to an adverse
inference have been met, exercise her discretion and decide not
to grant a request for an adverse inference.").

including any of the orders listed in Rule
37(b)(2)(A)(i)-(vi).

Defendants have not attempted to rely on any undisclosed

witnesses in this case.

Plaintiffs have not provided the Court with any legal

support demonstrating that the failure to identify a witness

should result in an adverse inference regarding what that

witness's testimony would be.  Plaintiffs cite <u>Indemnity</u>

<u>Insurance Co. of North America v. Electrolux Home Products</u>, 520

F. App'x 107 (3d Cir. 2013) as their only support for drawing an

adverse inference in this case.  While that case concerned

spoliation of physical evidence, it did not concern the failure

to identify a potential witness.

Federal Rule of Civil Procedure 26(e)(1) states:

A party who has made a disclosure under Rule 26(a) – or
who has responded to an interrogatory, request for
production, or request for admission – must supplement
or correct its disclosure or response:

(A)  in a timely manner if the party learns that in
some material respect the disclosure or
response is incomplete or incorrect, and if
the additional or corrective information has
not otherwise been made known to the other
parties during the discovery process or in
writing; or

(B)  as ordered by the court.

By depositions, Defendants identified these witnesses upon

prompting from Plaintiffs.  The Court will deny Plaintiffs'

Motion for an Adverse Inference.

**V.**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa.

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although

the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the

moving party may be discharged by "showing" – that is, pointing

out to the district court – that there is an absence of evidence

to support the nonmoving party's case' when the nonmoving party

bears the ultimate burden of proof." (citing Celotex, 477 U.S.

at 325)).

Once the moving party has met this burden, the nonmoving

party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial. Celotex, 477

U.S. at 324. A "party opposing summary judgment 'may not rest

upon the mere allegations or denials of the . . . pleading[s].'"

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For

"the non-moving party[] to prevail, [that party] must 'make a

showing sufficient to establish the existence of [every] element

essential to that party's case, and on which that party will

bear the burden of proof at trial.'" Cooper v. Sniezek, 418

F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at

322).  Thus, to withstand a properly supported motion for
summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party.  Anderson, 477 U.S. at 257.

**VI.**

The Court will grant Defendants' Motion for Summary
Judgment, as Plaintiffs have failed to prove Defendants'
legitimate nondiscriminatory reason for banning Plaintiffs was a
pretext.

> Under the ADA and the NJLAD, a plaintiff establishes
> unlawful retaliation if he proves: (1) that he was
> engaged in a protected activity; (2) adverse action by
> the defendant contemporaneous with the protected
> activity; and (3) a causal connection between the
> protected activity and the adverse action.  Under the
> familiar burden-shifting framework set out in McDonnell
> Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), once
> a plaintiff establishes a prima facie case of
> retaliation, the burden shifts to the defendant to
> articulate a "legitimate nondiscriminatory reason" for
> the adverse action against the plaintiff.  If the
> defendant proves a legitimate reason for the adverse
> action, the plaintiff must then prove that the
> defendant's proffered reasons were not the "true
> reasons," but instead were a "pretext for
> discrimination."  Although this framework developed in
> the employment context, it is appropriate to apply it to
> discrimination claims regarding public accommodations.

Good Wheels, 2011 U.S. Dist. LEXIS 26646, at *12-14 (citations
omitted) (first citing Stouch v. Township of Irvington, 354 F.
App'x 660, 667 (3d Cir. 2009); Victor v. State, 4 A.3d 126, 141
(N.J. 2010); then quoting McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802 (1973); then quoting Leibowitz v. Cornell Univ.,

584 F.3d 487, 499 (2d Cir. 2009); and then citing <u>Fahim v.</u> <u>Marriott Hotel Servs.</u>, 551 F.3d 344, 350-51 (5th Cir. 2008)).[10]

Plaintiffs have shown they engaged in protected activity under the ADA, which shifts the burden of production to Defendants. Defendants, in turn, have provided a legitimate nondiscriminatory reason for banning Plaintiffs from their property. Nicholson, Sr. testified that Cottrell "annoy[s] [his] customers" and "drive[s] them away" by "harassing" them and "[v]ideotaping them." (Tr. at 9, 20). He testified as his deposition:

> Well, I had one lady come in with two young children and said, "There's some guy out there videotaping me and my little girls. What's he doing"? I said, "He's not. He's videotaping somebody in the handicap spot." And she was all afraid. She thought they were being taped, her and her two little girls.

(Tr. at 10). When asked by Holland whether he would have been banned if there was no video involved, Nicholson, Sr. replied "[a]s long as you don't harass my customers, no." (Tr. at 21).

Nicholson, Jr. testified that the first time he met Cottrell "she came into the laundromat and made a big deal of someone that was parked in a handicap spot." (Tr. at 9). He testified: "She's the one that made the customer angry. She's

---

[10]    "The same showing of proof required for an ADA claim is required for the NJLAD claim, and, therefore, the same standard is used." <u>Cottrell v. Norman</u>, No. 12-1986, 2014 U.S. Dist. LEXIS 101645, at *18 n.4 (D.N.J. July 25, 2014).

the one that basically, when she came in, she was hollering and yelling.  She's the one that basically put everyone that was in the laundromat on alert.  She made a lot of people feel uncomfortable."  (Tr. at 14-15).  As to the second time he encountered Cottrell, Nicholson, Jr. testified:

> She came in with a video camera screaming, hollering and yelling who's parked in a handicap spot.  She got within what I call people's space, got within 18 inches of someone's face with a video camera, asking them if they were parked in a handicap spot, again, hollering and yelling.  Again, she had no intentions of parking there. That's when I kicked her off the property.  I'm a very reasonable person.  I don't like people parked in a handicap spot.  That's when I kicked her off the property, when she came in and basically made everyone feel comfortable [sic].

(Tr. at 15).  He testified this interaction was "far more aggressive" than the time he first met her.  (Tr. at 19).

As to the first time he met Holland, he said "it was the time he was trying to provoke a fight between someone that was parked in a handicap spot and himself."  (Tr. at 10).  He testified:

> Somebody was blocking where you actually would exit out of the handicap spot and he got out of his car and instead of just walking over and taking a picture and getting in his car and leaving, Mr. Holland kept walking around the vehicle, walking up to the front of the store, basically trying to agitate whoever was parked there, doing his best to create a disturbance, like they're very good at doing, and that's when somebody alerted me that he was there.  So I walked out and told him to get off the property.

(Tr. at 20).  He viewed Holland's behavior as "trying to start a

23

problem" and trying to get the car owner's attention. (Tr. at 25).

When asked how he and Nicholson, Sr. arrived at the decision to ban Plaintiffs from the property, he said it was "[b]ecause of them alarming people." (Tr. at 35). He continued:

> Again, by Maryann coming in with the video camera, screaming and yelling that somebody is parked in the handicap spot, getting in people's faces that weren't parked in the handicap spot by Richard Holland, trying to agitate the person that was either parked in a handicap spot, or again behind the access. So that's why.

(Tr. at 35-36). The Court finds Defendants have sufficiently demonstrated a legitimate nondiscriminatory reason for banning Plaintiffs from their property.[11] Plaintiffs, however, argue "[t]here is no proof . . . at all" that Defendants "banned Plaintiffs for misconduct and disruptive behavior." Plaintiffs

---

[11] Plaintiffs' disruptive conduct in this case is in line with their conduct at other establishments, which this Court has also found to be disruptive and a legitimate reason for banning them. For instance, in Cottrell v. Rowan University, 786 F. Supp. 2d 851 (D.N.J. 2011), Plaintiffs were banned from a college campus "based on ten documented incidents over the course of three months where plaintiffs acted hostile, harassing, disruptive, and aggressive to Rowan University staff, students, and visitors, including a nine year old child, a diabetic pregnant woman, and a student with spinal meningitis." Id. at 859. The Court found that, "[a]lthough plaintiffs' purported reason for coming onto campus was to ensure that the university complied with ADA regulations, it was their harassing and volatile behavior – and not their documentation of parking violations – that was the basis for their ban." Id.

ask the Court to find Nicholson, Sr.'s and Nicholson, Jr.'s testimony unreliable and not credible. Plaintiffs further seem to argue that the videos they provided the Court override, or at least cast doubt on, Defendants' version of events.

However, Defendants' "burden of producing a legitimate non-discriminatory reason . . . is 'one of production not persuasion; it can involve no credibility assessment.'" Palish v. K&K RX Servs., L.P., No. 13-4092, 2014 U.S. Dist. LEXIS 80606, at *32-33 (E.D. Pa. June 13, 2014) (first citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); and then quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)); accord Maull v. Div. of State Police, 141 F. Supp. 2d 463, 471 (D. Del. 2001) ("Because the burden of persuasion does not shift at this stage, the employer's legitimate nondiscriminatory reason is not evaluated insofar as its credibility is concerned."); Anderson v. McIntosh Inn, 295 F. Supp. 2d 412, 418 (D. Del. 2003). "The burden of production is a light burden." Palish, 2014 U.S. Dist. LEXIS 80606, at *33. The defendant "is not required to prove that their non-discriminatory reason actually motivated the decision, because the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. Defendants have satisfied their burden of production here.

Under the McDonnell-Douglas burden-shifting framework, it

becomes Plaintiffs' burden now to show that Defendants'

proffered reason was not the "true reason" but was instead a

pretext. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994)

("Once the employer answers its relatively light burden by

articulating a legitimate reason for the unfavorable employment

decision, the burden of production rebounds to the plaintiff,

who must now show by a preponderance of the evidence that the

employer's explanation is pretextual (thus meeting the

plaintiff's burden of persuasion).").

> Th[e] basic framework . . . illustrates that, to
> defeat summary judgment when the defendant answers the
> plaintiff's prima face case with legitimate, non-
> discriminatory reasons for its action, the plaintiff
> must point to some evidence, direct or circumstantial,
> from which a factfinder could reasonably either (1)
> disbelieve the employer's articulated legitimate
> reasons; or (2) believe that an invidious discriminatory
> reason was more likely than not a motivating or
> determinative cause of the employer's action. In other
> words, because the factfinder may infer from the
> combination of the plaintiff's prima facie case and its
> own rejection of the employer's proffered non-
> discriminatory reasons that the employer unlawfully
> discriminated against the plaintiff and was merely
> trying to conceal its illegal act with the articulated
> reasons, a plaintiff who has made out a prima facie case
> may defeat a motion for summary judgment by <u>either</u> (i)
> discrediting the proffered reasons, either
> circumstantially or directly, or (ii) adducing evidence,
> whether circumstantial or direct, that discrimination
> was more likely than not a motivating or determinative
> cause of the adverse employment action. Thus, if the
> plaintiff has pointed to evidence sufficiently to
> discredit the defendant's proffered reasons, to survive
> summary judgment the plaintiff need not also come
> forward with additional evidence of discrimination
> beyond his or her prima facie case.

Id. at 764 (citations omitted). "To discredit the employer's
proffered reason, . . . the plaintiff cannot simply show that
the employer's decision was wrong or mistaken, since the factual
dispute at issue is whether discriminatory animus motivated the
employer, not whether the employer is wise, shrewd, prudent, or
competent." Id. at 765. "Rather, the non-moving plaintiff must
demonstrate such weaknesses, implausibilities, or contradictions
in the employer's proffered legitimate reasons for its action
that a reasonable factfinder could rationally find them
'unworthy of credence,' and hence infer 'that the employer did
not act for [the asserted] non-discriminatory reason.'" Id.
(citation omitted) (alteration in original) (first quoting Ezold
v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir.
1992); and then quoting Josey v. John R. Hollingsworth Corp.,
996 F.2d 632, 638 (3d Cir. 1993)). "While this standard places
a difficult burden on the plaintiff, 'it arises from an inherent
tension between the goal of all discrimination law and our
society's commitment to free decisionmaking by the private
sector in economic affairs.'" Id. (quoting Ezold, 983 F.2d at
531).

    Plaintiffs' argument focuses on why Defendants' proffered
reason should be disbelieved. Plaintiffs argue: "There is ample
video evidence of Plaintiffs' enforcement activities. That
video shows that Plaintiffs do not engage in misconduct or

disruptive behavior.  Rather, they simply document the violation without having substantial interactions with customers and then advise an employee with the accommodation of the need ensure access [sic]."  The Court has reviewed the video evidence provided by Plaintiffs and finds that Plaintiffs have failed to proffer sufficient evidence from which a reasonable factfinder could conclude it was more likely than not that a "discriminatory animus" motivated Defendants in banning Plaintiffs.[12]  In fact, a reasonable factfinder would find the video entirely consistent with Defendants' proffered reason, as the videos clearly show disgruntled customers and disrupted business.

---

[12]    A court in this District found similarly in Good Wheels, 2011 U.S. Dist. LEXIS 26646.  Good Wheels was a lawsuit brought by Plaintiffs, in which Holland was engaging in similar action as in this case.  Id. at *3-4.  He was eventually told to leave the premises and that he was not welcome at Good Wheels.  Id. Plaintiffs brought claims for retaliation in violation of the ADA and the NJLAD.  Id. at *4.  The court determined that Plaintiffs' "activities are protected under both the ADA and the NJLAD" and that Plaintiffs established a prima facie case of retaliation.  Id. at *17-18.  The court further found the defendants provided a nondiscriminatory reason for banning Holland, in that they were disrupting customers.  Id. at *19-20. The court ultimately granted summary judgment in favor of the defendant, finding that the plaintiff "offer[ed] no evidence to prove that Defendants' proffered reason for banning Plaintiff was pretextual or that he was not disrupting customers."  Id. at *20.

What is clear from the video is that Plaintiffs do more
than merely document parking violations.  Rather, they take it
upon themselves, as shown in the videos, to act as a private
police force for ADA violations, seeking out offenders,
confronting them, castigating them, and, in demanding tones,
directing customers to move their vehicles, all while
videotaping the events.  Whether such visitors – who are not
defendants - have violated local ordinances and frustrated the
use of ADA-compliant facilities or not, Plaintiffs self-
appointed and confrontational enforcement efforts are of
legitimate concern to the affected businesses.

The ADA is an important and salutary statute.  Congress'
desire for vigorous enforcement is evident in several provisions
in the Act not the least of which is the creation of a cause of
action for retaliation, conduct which can frustrate and deter
enforcement.  An aggrieved party whose ADA rights have been
violated should have the right to document violations and assert
valid claims without fear of retaliation.

But it is equally true that the ADA is not a warrant to
alarm innocent third parties, harass violators of local
ordinances, or frustrate legitimate business activities.  See
Rowan Univ., 786 F. Supp. 2d at 859-60 ("Even if plaintiffs had
come onto campus to protect disabled persons' parking rights
does not mean they can conduct themselves in any manner without

consequence. The cloak of the ADA does not extend its protections that far."). Not every errant car in a handicapped parking spot justifies a disruptive inquisition of a well-meaning business that may or may not have the capacity to constantly monitor customer activity in its parking lots. What is called for is balance, civility and respect by all parties for the rights of all involved.[13] Here, it is the Plaintiffs who stepped over that line. In sum, the record demonstrates that Plaintiffs are unable to prove that Defendants' retaliatory actions were motivated by the requisite discriminatory animus. Without such proof, their case must be dismissed. The Court will grant summary judgment in favor of Defendants.[14]

---

[13] Plaintiffs' pleadings and evidence address several instances of conduct Plaintiffs label as stalking and harassment by Nicholson, Jr. More specifically, it appears Nicholson, Jr. documented what he considered Holland's disregard of traffic laws while riding his bicycle and videotaped Plaintiffs outside their home in an attempt to collect evidence for an individual who thought Plaintiffs were harming their daughter and was trying to get their daughter removed from their custody. Such conduct is disturbing and certainly appears to be a form of "retaliation" largely writ. Nonetheless, this apparent "tit for tat" behavior is insufficient to show that Defendants' decision to ban Plaintiffs from their property was motivated by anything other than unwarranted disruptions to Defendants' businesses and third parties.

[14] The Court does not address Defendants' arguments regarding the statute of limitations.

**VII.**

Plaintiffs ask for attorneys' fees pursuant to the catalyst theory based on Defendants withdrawing the ban, citing Templin v. Independence Blue Cross, 785 F.3d 861 (3d Cir. 2015).  The Court begins by noting that the Third Circuit in Templin was considering the narrow issue of whether the catalyst theory was available for recovery in an ERISA suit.  Id. at 865.  Reasoning that "the ERISA statute does not limit fee awards to the prevailing party," the Third Circuit concluded "that the catalyst theory of recovery of attorney's fees is available under the ERISA statute."  Id. at 865-66.  This case does not arise under the ERISA statute, and Plaintiffs cite no other authority to substantiate their request for attorneys' fees.

Contrary to Plaintiffs' briefing, the Third Circuit has rejected the argument that "the catalyst theory is alive and well in this judicial circuit," instead referring to the theory as "moribund."  A.P. Boyd, Inc. v. Newark Pub. Sch., 44 F. App'x 569, 573 (3d Cir. 2002).  The Supreme Court explicitly held "that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the . . . ADA."  Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 610 (2001); accord Templin, 785 F.3d at 865-66 ("[I]n Buckhannon, . . . the Supreme Court narrowed the use of the catalyst theory, finding that the defendant's voluntary change

of conduct did not establish the plaintiff as the 'prevailing party' required for an award of attorney's fees under . . . the ADA."). The Court will not award attorneys' fees to Plaintiffs in this matter.

An appropriate Order will be entered.


Date: August 24, 2018                      s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.